Good morning, your honors. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Michelle Wing. 18 U.S.C. We're all familiar with everything here. Let me ask you a couple of questions. I have a real interest in this case because I'm thinking, as a district judge, is there some way that this case could be useful to me in the many cases I have? Assume for the moment that a person gets violated on their first term of supervisory lease and they're given, what was the maximum she could have gotten was 36 months, right? Correct. For this particular violation under 3583E. So he gives her the three months and then before she gets released on the second term of supervisory lease, he finds out that she's engaged in terrible activity, some kind of pedophile or something, or is a violent sex offender or whatever. And then if she's released, she's going to hurt other people. What can the district judge do? If the pedophilic activity occurred during the second term of supervisory lease. Well, the second term hadn't started yet. So he finds out after he revoked the first term and gave her three months, he finds out that she's going to engage in terrible, harmful activity if she's back in the community after the three months in custody. What can the district judge do? Nothing. There's no jurisdiction. That's the same situation here, just inserting child molestation concerns for the fraudulent activity that Ms. Wing was prosecuting. Why can't he revoke the term that he imposed? He cannot revoke the term and imprison her as what happened here. What the judge could do is modify the conditions of supervisory lease. For instance, put on house arrest, add conditions. Could we just stop right there just to make sure I understand? So what is the judge's authority to modify the supervisory lease? Where does that derive from in your example? That is in Section 3583. We actually briefed it. To give you the exact subsection, I need to look at the briefs. But that's something that routinely happens in district courts, as Judge Moskowitz, I'm sure, is aware of. I know, but I'm just trying to get the statutory framework because then the next question, the obvious question, is if he can do that, is there a restrictive language that restricts him to that or her to that? Or if he can do that, can he also do something else? So that's really where I'm going. So let's start with this language that you say would permit the district judge to increase the supervisory lease. Is that in H? Is that E also? E. I apologize for not knowing. This comes up. I'll tell you how this comes up frequently. The person is about to be released from custody, and we get a letter from the probation department that says he has no place to go, he has no residence, can you impose a residential reentry center? And so he has to consent or there has to be a hearing. But assuming that's done, before a supervised release actually starts, we can modify the conditions. And during the term of supervised release, that routinely happens. So I'm looking at the statute, and I think that that is E2, where you basically extend the term of supervised release. So that is specific statutory authority to do that. It's expressed jurisdiction as opposed to. And that's followed by the language. A new little section, 3, and it says you could also revoke a term of supervised release and require to serve in prison all or part of the term of supervised release authored by statute that resulted in such a term with supervised release. So if temporally one can do the extension of the supervised release under 2, why doesn't the same apply to the specific revocation and sentence under subsection 3? Because 2 expressly provides the jurisdiction. E3, which discusses revocation, has no discussion of preemptive revocation. It speaks of a term of supervised release. Subsection A of 3583 says the term of supervised release follows imprisonment. 3624E says the same thing. But the extension is extending a term, and this is just revoking a term. The difference is the extension of the term is something that I and my client could agree to, and it's expressly provided the district court has that authority. And frequently we're doing that because we're trying to prevent a revocation during a term being served. It's the lesser of two evils, if you want to look at it that way, although I agree frequently it is to help my client, and it's a great idea from a social services standpoint. Mr. Rhodes, I'm looking at the language of 3, and am I misreading it when it says that you can revoke and require the defendant to serve in prison all or part of the term of supervised release? I read that language as indicating that incarceration is actually part of supervised release. I would disagree with that because the term of supervised release, it's clear in the statute, follows imprisonment. But as part of the tool, I guess we would say, that the court can utilize during supervised release, the court may send the defendant back to prison for some period of time. And the question I think this appeal raises is, what happens to supervised release during, in the interim? So is the three months part of the supervised release? It's sort of like serving a split sentence, where half of the sentence is spent in home detention and half is spent behind bars. It's still a sentence, let's say, of six months, three and three, but we don't split it up the way you're trying to split it up. Am I misreading the language? That's how I'm reading that language in 3. The language that is not in E3, but it's in 3583A and again 3624E, defines term of supervised release as commencing upon release of imprisonment. So when you're in prison, you're not, excuse me. Okay, the imprisonment is the first, I'll call it the original term of imprisonment for the underlying crime. In this case, what was it, embezzlement or bank fraud? Bank fraud, yes. Okay, so she got whatever she got, and then supervised release starts when she walks out. But one of the tools available to the court during supervised release is to re-incarcerate the defendant. And your argument, I think, is that any time spent in jail after that point can't be supervised release. Right, that is not the term of supervised release, and as Your Honor said, one of the tools available to the district court during supervised release is to re-incarcerate. Here, Ms. Wing was re-incarcerated before supervised release. All right, well then let me ask you this to tee off on Judge Moskowitz's original question. Suppose that Wing had committed an offense during the summer of 2008 while she was awaiting her reporting date between June and August to the Bureau of Prisons to commence her 90-day term that he had imposed. Would the district court have had authority to punish her for a violation? And if so, under what authority and what could the court do? Not a violation of supervised release because she was not serving supervised release in any sense? Well, he imposed it on June the 25th, did he not? Again, the term of supervised release falls imprisonment. The answer for the district court is to revoke the self-report grace that the district court granted to the defendant and order her into custody. But isn't she still under supervision at that point by the same probation officer who supervises her on supervised release? Excuse me, Your Honor. She is under supervision for self-reporting purposes. But the terms and conditions are no different than the terms and conditions of supervised release, are they? Correct, but she's not. She does not violate any state or local law. You don't take drugs, all that stuff. Yes, but she's not. And that's what Judge Molloy routinely does, perhaps Judge Moskowitz does. I'm going to permit you as a matter of grace to self-report. All these conditions of supervised release apply. But again, she's not serving it. And now she starts to serve a term of imprisonment. She's in month two of imprisonment. Facts now come to life about a further violation or concern. Under subsection 2, she's in prison. Can the district court extend the term of supervised release at that point? I'm not sure of the answer to that, but there is jurisdiction to do that, and that's the difference. And you think that's only under 2 that you could do that? To modify the condition. Actually, the judge would not be able to extend the term because the maximum term has already been set. No, let's say that she's not being given the maximum term. She's been given three months and 12 months. And there was a five-year supervised release max, so you got leeway. Now she's not yet out of her imprisonment term, but something happens. Can the judge say, I'm extending from 12 to 36 months? Because there's expressed jurisdiction, yes. And even more commonly, as Judge Moskowitz highly likely knows, is adding conditions. Correct. In part police, but also to help my clients. And I've been working with a probation officer, encouraging my clients to do this for their own good and take advantage of probation. So your position is that you cannot revoke a term of supervised release before the person begins to serve it. Is that just the bottom line of your position? Because there is no jurisdiction to statute, and as the court knows well, jurisdiction is not presumed. The presumption is there's no jurisdiction until it's affirmatively established. Right. Then under what authority does the court impose anything during the interim period? The self-reporting period that we were discussing? The authority to revoke the right to self-report, which unfortunately has happened to at least one of my clients, and they are arrested by the U.S. Marshal and they begin serving their bureau prison sentence. That tells me the consequence. That doesn't tell me the authority. Because it seems to me that the authority has to flow from the fact that your client has been originally convicted of bank fraud and sentenced to a term of imprisonment followed by supervised release. And where I'm having a hard time following your argument is that once she's released from that first term of imprisonment, why doesn't supervised release kick in at that point and under 3582, whatever the court does, it's acting under 3582? Because 3624E says, quote, the term of supervised release commences on the day the person is released from imprisonment. Right. So prior to imprisonment, that is not a term of supervised release. If it was, I would go to the district court and say, my client had three months to self-report. We had no problems, Your Honor. She served her prison sentence. She has a three-year term of supervised release. Three months before that three-year term is up, I want to get credit for the three months she served prior to self-reporting, so release her from supervised release. But why is it she's still under supervised release on June the 26th, before she reports to begin serving her? Isn't there a statute that says that the time during which the supervised release violation is being adjudicated, supervised release is called? Yes, that's 3583I. That's the delayed revocation statute. And that's an example where Congress specifically created jurisdiction, and prior to Congress doing so in this Court's decision in Neville, the Court found tolling based on incorporating the tolling provisions of Rule 32.1. There's nothing in 32.1 that talks about preemptive revocation that happened here. The other, I mean, I know how I deal with it. If they're going to surrender or if they're not going to be in custody, they're placed on conditions of pretrial release under the Bail Reform Act, and they could be punished for violating those conditions. One of the conditions has to be that they obey all laws, federal, state, and local. So, I mean, that's how you take care of the interim period under the Bail Reform Act. But if the judge could do what he did here, assume for the moment that you can revoke and give the three months, and then you find out more information and revoke in advance of it actually starting the new term of supervised release, there would be two revocations for that situation. And the statute says that you can only give, in her case, three years maximum on any revocation, although the statute says that they can serve all or part of the term of supervised release. And they say, however, you can't serve more than three years on any such revocation for the type of class of felony she had. So if the judge could revoke twice, we'd have a situation where the judge could give her three years for each revocation and give her, because it says for such revocation, he could give her six years rather than three years. Ms. Wing is actually subject to the old law that was changed as part of the Feeney Amendment of April of 2003 where you aggravate the revocation imprisonment sentence. Anybody who's sentenced in their first case after April of 2003 is subject to the law that Your Honor just canvassed. So, yes, she could get a series of ad nauseum three-year prison sentences. All the meantime, she's never been on a term of supervised release as defined by statute. Let me ask one last question. You had argued that Johnson doesn't really apply because this second release term was imposed under 3583H. But the language in Johnson, even though the statute was changed, the language that they talked about in Johnson is not the same language we're talking about here. So why does Johnson go out the window? Well, Johnson, first I would point the court to Ramirez where it talked, this court talked about the conventional understanding of revocation. And Ramirez was the same circumstances as here, although it wasn't supervised release. It was dealing with probation and parole. But they said, the court said we will use the conventional, not the metaphysical understanding of revocation at issue in Johnson. If anything, Johnson counters what happens here because Johnson established that supervised release term could be imposed post-imprisonment based on its metaphysical interpretation of revocation. Again, supervised release follows imprisonment. That's what Johnson established and then Congress amended at subsection H. Here, the supervised release term never followed imprisonment. It just hasn't happened yet. Suppose that she murdered another inmate during the 90 days that she's serving. Could the district court have modified her supervised release as a result of that conduct? The conditions, because there's express authority for do that. And that, again, is Judge Moskowitz. It happens all the time. But you're saying they could only modify the conditions. Not revoke and imprison. So what would be the conditions in the case of a murder that would protect against the situation? Well, first, obviously, there would highly likely be. You can't send her back to prison. You can't increase the prison sentence, according to you. Correct? Correct. So you simply have to restrict her through monitoring or this, that, or the other thing under the rubric of supervised release. In the meantime, there would highly likely be a prosecution in the prison district, which is exactly what happened here. It's not as though Michelle Wings off scot-free. She's serving an 86-month sentence for the fraud crimes that she was convicted of in Spokane. Thank you. My last question is, assume that the probation officer didn't file to revoke until after she had completed her entire sentence from the Eastern District of Washington. What would the district court have been empowered to do at that point with regard to supervised release? If she was actually serving a term of supervised release, I would probably be standing here making a different argument. That's what I thought. But, of course, in her case, if the other sentence intervenes and she never starts her supervised release, right? Correct. And that's, as Your Honor summarized, that's the problem, why there is no jurisdiction. And, again, jurisdiction is not presumed. The presumption is there is no jurisdiction unless it's affirmatively established. Modifications affirmatively established in the statute. There's nothing in the statutes to establish jurisdiction in these circumstances. Thank you. Thanks. Good morning. May it please the Court. Bishop Grewell on behalf of the United States. I can tell the Court has a lot of questions on this case. The first point I'd like to go to is the one you've already raised about modifying conditions. For instance, the offender had committed some sort of act of pedophilia or something like that. As we point out, it's E2 would allow you to modify, and it says any time before the term of supervised release has been expired or terminated. It doesn't say that the term of release has to have started beforehand. But I think that counsel agrees with that under that language. You know, you can, in the murder example, you can do anything you want to her short of imprisonment under legitimate supervised release. So I think that you both agree on that. The question is this slice before someone has actually started to serve, and where does the jurisdiction come from to wipe out the supervised release and go under 3 before the defendant's actually started? Certainly. So my point in raising E2 is that it has that restrictive language about the timing. E3, and it doesn't say anything about before the term has started. E3 doesn't say anything about before the time has started. It's even broader because it doesn't have the restriction that the term has to have not been expired or terminated, although we have to read I in to read that the term couldn't have been expired at that point. You couldn't. The only way you could actually do something after the supervised release is terminated would be to sweep in under I, correct? Correct. And that's because of the structure of the statute. I, we have to look at I as implying that there is this restriction on E3. But there's no other parts of the statute that imply some restriction that suggests that you can't revoke the term of supervised release before it's begun. Well, let me ask you this. Let's back up using the pedophile. I'm trying to use something where the person's a danger to the community. They get sentenced to X number of years in prison plus 3 years of supervised release, and there's no supervised release started yet. They're allowed to self-surrender to serve their prison term. And so they're on bail, and they usually get six weeks to self-report. During that six-week period, they commit acts of pedophilia. And the judge then issues an order to show cause why the supervised release, that's to follow the period of imprisonment, should not be revoked for the acts of pedophilia. I think that would be okay under the statute. Once the term of supervised release exists, because there's no restriction in the statute that suggests that it can't be revoked before it started, that you could go down that route, although. The problem that I see is that it says revoke for violation. But doesn't that mean violation of supervised release? Right, right. So there would not be a violation of the condition of supervised release. So I think Your Honor is correct that you'd have to do it under the Bail Reform Act. And so here, if supervised release has been revoked, how is this doesn't have to be a violation of the term of supervised release? There is a violation of a term of supervised release here. Right. And the statute just says violation of the condition of supervised release. It does not say that it's got to be that particular term. So then take my concern about the statute. It says the maximum you can give them for any such revocation. So if you have two revocations, then can't you, doesn't that contradict the statute that says the most you can give them for any such revocation of supervised release, in her case, was three years, right? Right. So if he could revoke it twice, why can't he give her three years plus three years? Because it would be, he could because it's a separate revocation that's occurred. And it's a revocation of the second term. So this, the such revocation would be the second term. Now this Court might decide that that would, if there was, if the judge was doing it sort of piecemeal, that that might be an abuse of discretion. And you might choose that under the 3553A factors that they're supposed to consider before revoking that they shouldn't, in fact, do a piecemeal revocation. But if it was something new that had occurred, the such revocation is revocation of the second term of supervised release. Well, here it wasn't anything new. It was just no one knew about it at the time he revoked. Correct. Correct. And so it was, he revoked and then he revoked again. What he did is he revoked the second term of supervised release. The order to show cause says the one that's supposed to start every other month, it was the 26th? The November 26th. Yes, the November 26th, that he was revoking that term based upon acts that took place during the first term. And I think that's the distinction. Had he somehow revised the first term, had he revoked the first term again, that would have been a modification, I think, of the first term, and you'd be giving more months for that particular revocation. That would be in violation of two then? I mean, what would it be in violation of? That you're only supposed to give so many months for a particular revocation. So there's a limit on how many months you can give for the revocation. And so if he revoked the same thing twice, you'd be giving more months than that particular revocation. The problem I have is this is so counterintuitive to what actually goes on. There's a term. There's a violation notice. There's a hearing. There's procedures under Rule 32.1. Then there's a revocation, a jail sentence, and supervised release. And it's sort of litigated like a regular case, and there's no finality if the district judge is right. At any time, if he finds more violations occurred during any term of supervised release, even though they're back on supervised release, he could revoke again. There's just no finality. It's certainly unique circumstances. I mean, there's finality because you can only revoke one per – you couldn't revoke them for the same violation again and again. So there's finality in that sense. They're not modifying the first term of supervised release. If we think about it in terms of like a normal trial, as Your Honor suggests, if we didn't know about some criminal violation that occurred, we could simply charge them again with that particular criminal violation and have a whole new trial on that set of circumstances. So it's different than sort of where we have a hidden crime, but it's unique circumstances in that there was an unknown violation that never went sanctioned as part of that first term of supervised release. And it seems under the language of the statute here that that violation can still be sanctioned by revoking the second term of supervised release. But if you had a longer period of incarceration under the initial term, for example, then what you're saying is during that entire period of your incarceration, you're exposed for things that the district court might not have known about or the prosecutor might not have known about. Is that right? I think if a – I mean, because if it's a longer period, there's more possibility things could pop up or come to light. I think if there's a subsequent term of supervised release, that would be correct. If we're just talking about a longer term period and still trying to modify the first term of supervised release, I think there might still be problems of the sort that Ms. Wing raises in her reply brief and in her original brief that we'd be essentially – that we'd be modifying the first term of supervised release and that it wouldn't be final. And I think then there would be that concern about finality because that you'd basically be going back and revising that first term of supervised release, which the case law does suggest that those supervised release revocations are subject to finality as well. And so I think that could cause problems with the – But as long as you get a successive term of supervised release, in effect you're always at risk because you don't know that the door has been closed on the past, basically. You don't know that as far as a matter of the jurisdiction. I would argue that if there was some – if somehow the court or the U.S. Attorney's Office in probation were playing some game where they had another violation that they were holding in their back pocket. Holding in the wings, yeah. First of all – Right, right. I think the district court, first of all, in revocation, they have to consider the 35583A factors that that particular provision refers to, which include the nature and circumstances of the offense, that like offenders are treated in a like manner. And so the court might choose not to revoke based on if it thought that we were holding something in our back pocket here. Secondly, if the district court went along with that and this sort of gotcha game, then this court could certainly consider that an abuse of discretion to allow these successive hold it in your back pocket revocations. We're not saying that the district court has to do that or that the district court should do that. We're saying there's jurisdiction for it to do that. But at the sentencing, this court would still have a check on abuses, as would the district court. The contrary interpretation that Ms. Wing advocates is one where the offender can basically create a unilateral statute of repose. They can commit some severe offense, keep it concealed, and then insulate that from a sanction by committing some lesser violation. For instance, if they have a condition that they're not supposed to be around alcohol or drink, go get a beer, tell the probation officer, go to the court, get revoked, and the court would probably give them a month if much of anything because, oh, they came forward, they were forthcoming, and now you've insulated their earlier more egregious violation from any sanction. And so I think that's the more egregious concern. We're not saying that this court, by deciding in our favor, is sanctioning piecemeal revocations. I have great difficulty with that in terms of true human nature because say they rob a bank, and they're afraid that if the judge finds out I robbed the bank, he's going to give me the maximum unsupervised release violation. So I'll go get a beer, and then I'll tell them I got a beer. To cover up I robbed the bank. But if they find out that he robbed the bank, he's more concerned about the sentence he's going to get for the bank robbery than the supervised release tack-on. So I just don't find that really founded in true human nature. Well, I guess if there's truly a concern that because he's going through a revocation proceeding, he's going to – that's somehow going to lead the court to find out about the bank robbery. I think that would be a concern. I just don't think that he's going to go to a minor violation so he can try to cover up the bank robbery. He's either going to be caught for the bank robbery or not. He doesn't take a bath on the bank robbery where he can't be prosecuted for it by going to get a beer and telling the probation officer. Even if that's true, it doesn't necessarily argue that there shouldn't be a jurisdiction here to deal with these concealed violations. I mean, Ms. Wing in the supervised release hearing here was asking for a low period of time in part based on the fact that she's paying double restitution. Well, I think we can probably all agree where that double restitution is probably coming from. It was coming from the other offense that she committed. So she was not only keeping back this other offense that she committed, but she was sort of actively using it to get a lower sentence here. Coming back to the question I started with, what about the maximums under the statute? What happens with that if you can do this? Can't the judge give her six years for the – if you're correct and Judge Malloy is correct, then he could have given her three years for the original violation. And now he's revoking the second term before it starts. He can give her three years for that. And he certainly could do that. And under our interpretation of the statute, as long as there was, first of all, a violation that he hadn't sanctioned. So we have two violations, one that's been sanctioned, one that hasn't been. But if he did it all at once, all he could give her was three years. Correct, correct. But I think that's why this Court, if it was clear that the judge knew about all of those in the first place, could consider under 3553A, a fact that the judge was supposed to consider, that he abused his discretion by doing that. Again, we're not saying that you couldn't say that that's impermissible, but the reason it's impermissible isn't because he didn't have jurisdiction to do it. It's because it would be an abuse of discretion under the factors that he's supposed to consider in revoking the sentence. It seems to me the question really is, can he revoke a term that hasn't started? That he's imposed, but that it hasn't started. Isn't that really the issue? I think that's one of the questions. I think there's also a question of, can he revoke a subsequent term based on violations from a prior term? I mean, I think that's also a question. But of course, if the term hasn't started, it has to be from a prior term. Right, right, right, right. So it doesn't seem to make sense, though, to simply say that, and I don't think Mr. Rhodes is saying this, but if he is, okay, that if we just waited two days later, we could have revoked for here. I think he's saying that we could have never revoked based on those prior. I'm not sure. I thought he was saying that would be okay because he would have started. So if we wait ten years, and when she comes out in ten years from serving her other sentences and so forth, we could still revoke based on this? That's what I thought he said, but we'll ask him. Okay. I think your time has expired. That was the purpose of one of my hypotheticals. I asked him that specific question, and I thought he said that that would be okay. So anyway, well, thank you. We'll explore that shortly. Thank you, Your Honor. Mr. Rhodes, we'll give a minute, but maybe you can answer the question on the table. Yes, Your Honor, and then I'd like to make two points. Judge Tallman expressly, specifically asked me that question. That's not the issue here today. We're not agreeing that there would be jurisdiction. I think I would be before Judge Malloy saying, you can't do that, Your Honor. I expect I would be back before this Court saying the same thing. Well, why not? Why not? Under the statute. If the probation officer waited until November the 28th, two days after she was released from her 90-day sentence, to initiate a new revocation proceeding, at that point she would be on supervised release. The Court, assuming that there was no evidence of gamesmanship, could look back, and whether it's doing so under 3145 or under 3583, it could modify at that point or revoke her supervised release and impose a brand-new term, could it not? I agree I'd have a much more difficult position to argue because there would be a term of supervised release. But I think your argument would be that they can revoke for a violation of that term. Correct. That occurred during that term. It would be a more difficult argument to make. You read the statute that you can revoke a term of supervised release, parentheses, that has already started. And that's what, in terms of the new question, the hypothetical or the fact? It has to have started, in your view. Yes. If I say to you, what's your term of supervised release? The defendant would say, well, it was 33 months. That doesn't mean you've started it, but that is a term of supervised release. But you're reading term to mean having been initiated or having started. For revocation purposes. For revocation purposes. And so your position is that the violation has to occur during the term of supervised release so that if it doesn't come to light because it was fraud and it was hidden, but it occurred prior to November 26th, that the district court is without any authority whatsoever to punish it? Hypothetically, assuming that we prevail under the facts of this case now in our jurisdictional argument, Ms. Wing serves her 86 months that she's serving for the Spokane prosecution. She will then be under concurrent terms of supervised release, one from the Spokane court, one from the Missoula court. And if the revocation petition that was filed on November 25th of 2008 is renewed at that time, then that may be the argument that I'm making, that the violations have to occur during the term that the government is attempting to revoke. Even if there's no way that the probation officer or the court could have known about the misconduct? And that's one of the difficulties in the government's argument. It keeps making these equitable arguments, and jurisdiction isn't a question of equity. You don't find jurisdiction because that's the right thing to do. No, but Johnson speaks of congressional intent in enacting the supervised release legislation that the whole purpose is to protect the public from recidivism and continued bad conduct. And maybe there's a gap here that Ms. Wing can take advantage of, but I think Congress would be very surprised to find out that Judge Malloy was without any authority whatsoever to redress the violations simply because of the time in which it occurred and when the court found out about it. And I'll agree that would be a more difficult argument if we get there. Today there is no jurisdiction. He didn't impose for the supervised release. Correct. Because under the old law he couldn't. Right, because he gave her the maximum prison term. Yes. Right. All right, thank you. Can I make two points, Your Honor? You may. Going to the statutory language that Your Honor asked about, E2, what's critical there is that, and this was not in my brief, I was mistaken when I said that, is it says that the supervised release terms may be modified at any time prior to the expiration or termination of the term, that any time prior language is omitted from E3, which discusses revocation. Exactly. It doesn't have that restriction. So revocation. That actually seems to go counter to your argument. No, it doesn't, Your Honor, because the government keeps saying that there's nothing in E3 about the timing of revocation. Correct. The government said something to the effect of there's nothing that implies a restriction on the timing of revocation. E3, when it discusses revocation, says that the imprisonment term will be without credit for time previously served on post-release supervision. As Judge Moskowitz highly likely knows, that's referred to as street time or time on paper by my clients. And what E3 is saying is that when somebody is actively serving a term of supervision, and let's say they make it two years into a three-year term, then they get revoked and imprisoned. There is no credit for the two years on street time, on paper. And so the government's mistaken when it says that there's nothing, that E3 doesn't say anything about the timing of revocation, and there's nothing that implies a restriction on the timing of revocation, because that language does exactly that. Although the statute ultimately puts a final lid on it, does it not? Three years. In terms of the length that the district court may impose for revocation and subsequent re-imposition of supervised release. The way the statute is now, the prison terms can never end, but under a Ninth Circuit decision, the amount of supervised release eventually ends. So at some point, a defendant who violates and is revoked and imprisoned, and violates and revoked and is imprisoned, there is no more supervised release. So at that point, there's nothing left to revoke, which is our point. Thank you. I think we have your argument well in mind. We've let you both have extended time because it's a very complicated and interesting case. We really do appreciate the briefing and the very good arguments of counsel. Thank you. Thank you, Your Honor. The United States v. Wing is submitted.
judges: Moskowitz, McKeown, Tallman